UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARLA RACHELLE WALTON, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:13-cv-01271-SI |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Lisa Porter, KP Law PC, 5200 S.W. Meadows Road, Suite 150, Lake Oswego, OR 97035. Of Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Richard M. Rodriguez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**SIMON, District Judge**.

Marla Rachelle Walton seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

I.  BACKGROUND

A. The Application

Ms. Walton filed applications for SSI and DIB on March 11, 2010, alleging disability as of December 31, 2005 due to chronic back pain, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and post-traumatic stress disorder ("PTSD"). AR 233-43, 263. Born in February 1968, Ms. Walton was 37 years old on the alleged disability onset date. AR 55, 233. She speaks English, completed school through the ninth grade, and obtained a GED. AR 57, 262, 271, 327. She has past work experience as a bookkeeper, caretaker, and a dishwasher. AR 264. The Commissioner denied Ms. Walton's applications initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). AR 101-28, 131-60. After an administrative hearing, held on April 9, 2012, the ALJ found Ms. Walton not to be disabled. AR 20-29, 51. The Appeals Council denied Ms. Walton's subsequent request for review. AR 1-3. The ALJ's decision then became the final decision of the Commissioner, and Ms. Walton sought review in this Court.

B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

> significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.     The ALJ's Decision

The ALJ performed the sequential analysis. At step one, he found that Ms. Walton had not engaged in substantial gainful activity since December 31, 2005. AR 22. At step two, the ALJ concluded that Ms. Walton had the following severe impairments: degenerative disc disease, affective bipolar disorder, and posttraumatic stress disorder. *Id*. At step three, the ALJ determined that Ms. Walton did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id*.

The ALJ next assessed Ms. Walton's residual functional capacity ("RFC") and found that Ms. Walton retained the ability perform light work with the following limitations: she can

perform tasks requiring engagement of postural maneuvers no more than occasionally; reach overhead no more than occasionally; she should avoid exposure to heights, hazards and heavy equipment; she should be allowed a sit-stand option to be executed at will; and she is limited to simple, routine tasks that require no more than occasional public contact. AR 23-24. At step four, the ALJ found that Ms. Walton was unable to perform any past relevant work. AR 28. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Walton could perform jobs that exist in significant numbers in the national economy, including small products assembler, garment sorter, and electronics worker. AR 28-29. Accordingly, the ALJ found Ms. Walton was not disabled. AR 29.

## II. STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

### III.    DISCUSSION

Ms. Walton argues that the ALJ erred by: (1) improperly rejecting her credibility; and (2) formulating an incorrect RFC, which caused error at step five. For the reasons discussed below, the Court affirms the ALJ's decision.

### A.    Credibility Finding

Ms. Walton argues that the ALJ erred by discrediting her subjective symptom testimony. Pl.'s Br. 20. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ "may consider ... ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be

upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Ms. Walton testified that she was completely disabled due to her conditions, most significantly her neck and back pain and mental health issues. AR 24, 62. She testified to the ALJ that she cannot sit for prolonged periods because of neck and back pain. AR 62. Ms. Walton also claimed that she could sit for one hour only, walk half a mile, and lift a gallon of milk. AR 76-77. She testified that she is emotionally unstable and suffers from anxiety due to bipolar disorder and PTSD. AR 79, 81-82. Ms. Walton also testified that she needs to lie down every "couple hours … for about half-an-hour" because of neck pain. AR 81.

The ALJ rejected Ms. Walton's testimony regarding the nature and extent of her limitations. AR 25-26. First, he noted that Ms. Walton's sporadic work history reflected negatively on her credibility. In making an adverse credibility determination, the ALJ may rely on evidence of an "extremely poor work history" and evidence showing "little propensity to work." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ noted evidence in the record of Ms. Walton's sporadic work history and pointed out that Ms. Walton has "only earned above [substantial gainful activity] levels five times in her life." AR 24-25, 253-54. Evidence of Ms. Walton's work history therefore provided some justification for the ALJ's credibility finding. *Thomas*, 278 F.3d at 959.

Second, the ALJ found that evidence of drug-seeking behavior reflected negatively on Ms. Walton's credibility. Evidence of drug-seeking behavior alone provides a sufficient basis to conclude that a claimant is not credible. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). For example, the ALJ noted that Ms. Walton "admitted to selling 20 of her Percocet pills for financial gain." AR 25, 485, 516, 519. This evidence suggests that Ms. Walton exaggerated

Page 8 – OPINION AND ORDER

her physical symptoms in order to secure prescription drugs for purposes of financial gain. This provides further weight to the ALJ's adverse credibility determination. *Edlund*, 253 F.3d at 1157.

Third, the ALJ found that Ms. Walton' activities of daily living undermined the credibility of her statements regarding the severity of her limitations. AR 24. Daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Bray*, 554 F.3d at 1226-27 (evidence of an active lifestyle can undermine a disability claimant's credibility). The ALJ noted that despite Ms. Walton's testimony regarding her severe physical limitations, she spent significant time and energy providing fulltime childcare for her 10-year-old son with "high needs." AR 24, 56, 67-68, 603. The ALJ also noted that Ms. Walton was able to raise another child during the relevant period, cook for her family, go shopping, and perform household chores including cooking, doing dishes, and doing laundry. AR 24, 67-68, 359-61. Based on this evidence, the ALJ reasonably concluded that Ms. Walton "has had little interest in working for a living" and that lack of motivation, not disability, explained her failure to sustain gainful employment. AR 25. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (evidence of self-limitation and lack of motivation are appropriate considerations in determining credibility).

Thus, the ALJ provided sufficient reasons for rejecting Ms. Walton's credibility. Although Ms. Walton offers an alternative interpretation of the evidence of her daily activities, the ALJ's rational evaluation of the evidence must be upheld when supported by record evidence. *Batson*, 359 F.3d at 1193; *see also Rollins,* 261 F.3d at 857 (9th Cir. 2001) (even if the consistency of a claimant's daily activities with the claimant's testimony is somewhat equivocal, the court should not second-guess the ALJ's judgment when it is supported by substantial evidence).

Page 9 – OPINION AND ORDER

Ms. Walton also challenges other reasons offered by the ALJ to support his credibility determination. The Court, however, finds that any such error that might be present is harmless because, as discussed above, the ALJ provided other clear and convincing reasons supported by record evidence for rejecting Ms. Walton's testimony. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (a single erroneous basis for an ALJ's determination is harmless error if other valid reasons supporting that determination remain).

First, Ms. Walton asserts that the ALJ noted that Ms. Walton failed to comply with recommended treatment. AR 26. An "individual's statements may be less credible if … the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, *available at* 1996 WL 374186. The ALJ, however, may not reject a claimant's credibility based on the exercise of poor judgment in seeking rehabilitation when they suffer from a mental impairment. *Id.*; SSR 82-59. Here, Ms. Walton reported to her counselor that she had missed several appointments because she had "trouble with organization" and memory. AR 26, 420. As Ms. Walton's difficulties in following through with treatment recommendations appear related to her mental impairments, this does not provide additional weight to the ALJ's credibility determination. As stated above, however, the ALJ provided other legally sufficient reasons to reject Ms. Walton's credibility and his conclusion is upheld. *Carmickle*, 533 F.3d at 1162.

Second, Ms. Walton argues that the ALJ failed properly to consider her pain testimony and a statement by psychological expert Miller Garrison, Ph.D., that Ms. Walton's pain was "the primary limiting factor" for her. Pl.'s Br. 22-24; AR 88. The Court rejects this argument. The ALJ considered Ms. Walton's pain testimony and other evidence of pain in his credibility determination. *See* AR 22-27. As discussed above, the ALJ nevertheless provided other clear and

Page 10 – OPINION AND ORDER

convincing reasons for rejecting Ms. Walton's testimony, and the Court may not substitute its judgment for the Commissioner's rational conclusions. *See Batson*, 359 F.3d at 1193 (9th Cir. 2004). The ALJ's credibility finding is affirmed.

**B.    RFC Assessment and Step Five Findings**

Ms. Walton also argues that the ALJ developed an incorrect RFC, thus causing him to formulate an improper hypothetical to the VE and causing further error at step five. Specifically, Ms. Walton argues that the RFC did not account for her limitations in persistence and pace. Pl.'s R. Br. 1. The ALJ is not required to incorporate limitations into the RFC that he properly finds not credible. *See Batson*, 359 F.3d at 1197. Further, the Ninth Circuit has held that a restriction to simple tasks can adequately capture moderate limitations in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). Here, the ALJ incorporated Ms. Walton's limitations into the RFC by limiting Ms. Walton to performing only simple, routine tasks.[1] AR 23-24. The ALJ incorporated this limitation into his hypothetical to the VE. AR 92. On this record, the ALJ formulated an adequate RFC, presented a proper hypothetical to the VE, and made reasonable findings at step five. *Batson*, 359 F.3d at 1197. The Court thus affirms the ALJ's conclusion.

/ / /

/ / /

/ / /

---

[1] Although Ms. Walton does not address the issue in her briefing, the Commissioner concedes that the ALJ failed to include a limitation on contact with co-workers in the RFC. AR 27, 87, 93, 572. The Court finds that this omission does not affect the ultimate non-disability determination, however, because the jobs identified by the VE do not require more than occasional co-worker contact. *See* Dictionary of Occupational Titles, Fourth Edition, 222.687-014 (Garment Sorter), 739-.687-030 (Small Products Assembler), *available at* 1991 WL 672131, 1991 WL 680180. The ALJ's omission of this limitation, therefore, is harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Page 11 – OPINION AND ORDER

## IV.    CONCLUSION

The Commissioner's decision that Ms. Walton is not disabled was supported by substantial evidence in the record and is AFFIRMED.

DATED this 20th day of October, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
